

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN C. NUNNERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 06 C 5908 |
| ) | |
| SUN LIFE FINANCIAL DISTRIBUTORS, INC., ) | Magistrate Judge Cole |
| a Delaware corporation, d/b/a Sun Life Financial, ) | |
| and SUN LIFE ASSURANCE COMPANY OF ) | |
| CANADA, a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

John Nunnery has challenged the decision of Sun Life Assurance Company of Canada ("Sun Life"), denying his claim for "accidental death" benefits following his wife's sudden and unexplained death while lying on a couch in their home. He has moved to compel Sun Life to comply with certain discovery requests that seek production of documents that go beyond the record on which Sun Life's decision to deny benefits was based. Sun Life has objected to the requests to expand discovery and seeks a protective order limiting discovery to the record on which the denial of benefits was based.

### I.

### BACKGROUND

This case began in the Circuit Court of Cook County on September 9, 2006, when the plaintiff sued Sun Life for wrongfully denying his accidental death benefits claim. Plaintiff and his wife, Kathy, were covered through a group life insurance plan he had through his employer. Sun Life paid basic death benefits, but determined that Mrs. Nunnery did not suffer an accidental death.

On October 31, 2006, Sun Life removed this case to the District Court for the Northern District of Illinois on the grounds that the District Court has exclusive jurisdiction over this employee benefits case under the Employee Retirement Income Security Act of 1974. ("ERISA"). Sun Life also moved to dismiss the plaintiff's complaint, as it sought recovery for breach of contract and "bad faith" under the Illinois Insurance Code. Because ERISA preempted plaintiff's state law claims, the court granted Sun Life's motion on January 23, 2007. On March 28, 2007, plaintiff filed his First Amended Complaint at Law ("*Complaint*") seeking recovery against Sun Life under §1132(a)(1)(B) of ERISA. But the contention remained the same: Sun Life wrongfully denied the plaintiff's claim that his wife had died from an accidental bodily injury. (*Complaint*, ¶¶ 16-17). The difference in the benefit paid out – according to plaintiff's complaint – would be close to a quarter of a million dollars. (*Complaint*, ¶ 19).

## A.

### Pertinent Policy Terms

The parties have made no reference to the terms of the group insurance policy even though it provides the backdrop for their discovery dispute. The policy defines an accidental death as one due to accidental drowning, accidental exposure to the elements, or sustaining an "Accidental Bodily Injury." (Employee Group Benefits, at 39; Sun Life Policy, at 37). An "Accidental Bodily Injury means bodily harm caused by an accident which is sustained directly and independently of all other causes." (Employee Group Benefits, at 55; Sun Life Policy, at 37). No accidental death benefit is payable for death due to bodily or mental infirmity or disease of any kind. (Employee Group Benefits, at 42; Sun Life Policy, at 38). Similarly, the benefit is not payable where death is due to voluntary use of a controlled substance, unless taken under the advice of a physician. (Employee

2

Group Benefits, at 42; Sun Life Policy, at 38). The claim provisions of the policy require written notice of death claims within thirty days of death, and that proof of the claim be provided within ninety days. (Employee Group Benefits, at 44; Sun Life Policy, at 66). It is up to the insured to provide proof of a claim, and that proof must be satisfactory to SunLife. (Employee Group Benefits, at 44-45; Sun Life Policy, at 66-67).

## B.

## The Death Of The Plaintiff's Wife, And His Claim For Accidental Death Benefits

The plaintiff's wife died on September 20, 2003, at the home she shared with plaintiff in Seoul, South Korea. (*Complaint*, ¶ 15; *Plaintiff's Reply in Support of Motion to Compel*, at 2). She had a history of Crohn's disease and epilepsy. The plaintiff gave Sun Life initial notice of a claim on November 24, 2003, more than sixty days after his wife's death. (Administrative Record, SunLife 00198). Sun Life apparently did not hold plaintiff to the deadlines in the policy, because it informed him of what information would be required to prove his claim. (SunLife 00198-99). By February 5, 2004, Sun Life had made payment, with interest, of the ordinary death benefit, just over $40,000. (Sun Life 00190). The plaintiff submitted an accidental death claim to Sun Life on April 18, 2005, some nineteen months after his wife's passing. (*Complaint*, ¶ 18; *Plaintiff's Motion to Compel*, ¶ 4(a)). It would appear that SunLife had no problem with the tardiness of the claim. The claim was stamped received on May 5, 2005. (Administrative Record, SunLife 00153). The autopsy report and police report, and Korean-English translations, were also received that day, as well as a report from the United States State Department, occasioned by the death of an American citizen in a foreign land. (SunLife 00158-00181).

3

When police interviewed the plaintiff, he said a neighbor had found his wife dead on the sofa at home – the plaintiff was in the hospital for a tonsillectomy. (SunLife 00178). He said he thought his wife died from aggravation of her diseases. (SunLife 00180). He explained that she had been very sick due to disease of her large intestine and other organs the past three-and-a-half years. (SunLife 00179). She was taking ten different kinds of medication. (SunLife 00180).

The plaintiff allowed an autopsy (SunLife 00180). The report noted his wife's history of Crohn's disease and epilepsy. Toxicology revealed her various medications, as well as a .10% blood alcohol level. (SunLife 00169). The blood alcohol level was dismissed as a possible cause of death. (SunLife 00170). The report further noted that her heart was enlarged and fatty, which could cause sudden death. (SunLife 00170). Epilepsy medication was below therapeutic levels – another possible cause of sudden death. (SunLife 00170). There were scratches and a bruise on her abdomen and extremities, but these were too minor to have been a cause of death. (00169). The State Department's "Final Report of Death of an American Citizen" listed cause of death as "unable to determine, but heart disease and epilepsy led to death." (SunLife 00158).

On May 9, 2005, Sun Life wrote to the plaintiff to advise him that it could not consider his wife's death to be from "Accidental Bodily Injury" based on the foregoing information. (SunLife 00146). The letter explained that the determination was based on the information submitted, and specifically noted the autopsy and plaintiff's statement to the police. (SunLife 00147). It informed him of his rights to appeal the determination. (SunLife 00146). The plaintiff did appeal, and his appeal was denied. As part of the process, a medical review was performed. The plaintiff disagrees with one of the statements in that review, that the cause of death was Crohn's disease or epilepsy, and points out that the review acknowledges that his wife was taking Tegretol, along with alcohol,

4

which is contraindicated. (*Plaintiff's Motion to Compel*, ¶¶ 4(f)-(h)).

## C.

## The Parties' Discovery Dispute

Plaintiff initially sought discovery on June 8, 2007, eight months after the case had been removed to the district court. He wants depositions of the Sun Life claims administrator who worked on his claim and the medical consultant who reviewed the claim, as well as "policy and procedure documents, including but not limited to those considered or termed as manuals, guidelines, rules or regulations, brochures, training materials, quotas, incentive programs for employees, or instructions on conducting investigations . . . ." (*Plaintiff's Motion to Compel*, ¶ 5). Sun Life asks for a protective order, arguing that as this is an ERISA case where the court must perform a deferential review, discovery is limited to documentation contained in the administrative record.

## II.

## ANALYSIS

Since ERISA abounds with the language and terminology of trust law, principles of trust law determine the appropriate standard of review for actions under §1132(a)(1)(B). *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989). Those principles make a deferential standard of review appropriate where an administrator exercises discretionary powers "to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. *See also Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007); *Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 773 (7th Cir. 2006). Thus, where a benefit plan gives the administrator or fiduciary broad discretionary authority, denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard. Where the plan does not invest the administrator with such broad discretionary

authority, judicial review is under a *de novo* standard. *See Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 484 (7th Cir. 2007). In sum, plenary review is the default standard and is required when the plan documents contain no indication of the narrow scope of judicial review. *Id.*; *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 637 (7th Cir. 2005); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000).

"If a plan 'is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly.'" *Diaz*, 424 F.3d at 637. However, there being no magic in words, *Briscoe v. Bank of Commonwealth of Kentucky*, 36 U.S. 257, 343 (1837)(Story, J., dissenting), no particular formulation is required as long as the language of notification sufficiently informs the plan participants that the administrator has not only broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret, implement and even to change the rules. *Patton*, 480 F.3d at 486; *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 815 (7th Cir. 1997)("No magic words are required to confer discretion on an administrator . . . ."); *Petrilli v. Drechsel*, 910 F.2d, 1441, 1447 (7th Cir. 1990)(same).

Under the arbitrary and capricious standard, a plan administrator's decision will be overturned only "'if it is downright unreasonable.'" *Mote*, 502 F.3d at 606. A court will not substitute the conclusion it would have reached for the decision of the administrator, as long as the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts. *Id.* "A satisfactory explanation is one that gives 'the specific reasons for the denial,' but it need not explain 'the reasoning behind the reasons, ... [that is,] the interpretive process that generated the reason for the denial.'" *Id.*

The policy covering Ms. Nunnery clearly informed plan participants that Sun Life had broad

discretion to deny claims and that judicial review was subject to the arbitrary and capricious standard:

> The Plan Administrator has delegated Sun Life its right to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy. This right includes, but is not limited to, the determination of eligibility for benefits, based upon enrollment information provided by the Policyholder, and the amount of any benefits due, and to construe the terms of this Policy.[1]
>
> Any decision made by Sun Life in the exercise of this right, including review of denials of benefit, is conclusive and binding upon all parties. Any court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious.

(Sun Life Policy, at 67).

The fact that the policy did not use the word "discretion" is not decisive, since "words (such as 'the committee has discretion to ...') are unnecessary.'" *Petrilli*, 910 F.2d at 1447 (parenthesis and ellipsis in original). *Compare Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945)(L.Hand, J.)("But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary. . . ."). The language of the plan forcefully and clearly conveys to the reader that it is for Sun Life to determine eligibility for benefits, the amounts due (if any), and that those determinations – which also include the right to construe policy terms – are final, conclusive and binding. This language was sufficiently clear to require judicial review of determinations of eligibility for benefits under the arbitrary and capricious standard. *See Wehrenberg v. Federal Signal Corp.*, 2007 WL 1225375, *2 (N.D.Ill. 2007)(Kennelly, J.)(plan that empowered the administrator to determine all questions of interpretation of policy in a manner consistent with the plaintiff's

---

[1] Decisions under a plan that empowers the administrator to "interpret" plan terms are reviewed under the arbitrary and capricious standard. *Chojnacki*, 108 F.3d at 815. The words "construe" and "interpret" are often used synonymously. *Id.*

7

documents and provided that the plaintiff administrator's construction or determination shall be conclusive and binding was subject to the arbitrary and capricious standard). Less capacious language in other policies has been held sufficient to require the application of the arbitrary and capricious standard of review. *See e.g., Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 810-811 (7th Cir. 2006)(" . . . sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues."); *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005)(". . . discretionary authority to determine your eligibility for benefits and to interpret the terms and conditions of this Policy."); *Herzberger*, 205 F.3d at 331 (positing "safe harbor" language: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.").[2]

As the plaintiff initially and wisely conceded, the arbitrary and capricious standard is applicable to review of Sun Life's denial of benefits for accidental death in connection with Ms. Nunnery's death. While the reply brief attempts to withdraw the concession, the attempt comes too late and is in any event, unavailing. (*Plaintiff's Motion to Compel,* ¶ 6).[3]

---

[2] In *Patton*, the Seventh Circuit held that a very different Sun Life policy did not contain the necessary language requiring application of the arbitrary and capricious standard. The only notice plan participants had under that disability policy was the single statement on page 31 of the policy: "Proof must be satisfactory to Sun Life." 480 F.3d at 486. *See* Exhibit 1 to defendant's motion for summary judgment at page 31 (available on Pacer); *Brief of Plaintiff-Appellant in Patton*, 2006 WL 4914780, *14-15; *Brief of Appellee in Patton*, 2006 WL 4914781, *26-28. The Seventh Circuit found this statement not sufficiently clear notification to limit review under the arbitrary and capricious standard. 480 F.3d at 486.

[3] In his reply brief, the plaintiff argues that it is premature to determine the applicable standard of review. (*Plaintiff's Reply in Support of His Motion to Compel*, at 3-4). It is too late to for a "do-over" – plaintiff cannot take back his concession. "A reply brief is for replying" not for raising new arguments that ought to have been advanced in the opening brief. *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir.1987) (Posner, J., concurring). *See also United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006).

(continued...)

A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. *Patton*, 480 F.3d at 483, 490 and 490 n.7; *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004).[4] In *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999), the Seventh Circuit discussed the resulting limit on discovery in such cases:

> We have allowed parties to take discovery and present new evidence in ERISA cases subject to *de novo* judicial decisions, *but never where the question is whether a decision is supported by substantial evidence, or is arbitrary and capricious*. Six courts of appeals have held that when review under ERISA is deferential, courts are limited to the information submitted to the plan's administrator. One court has gone the other way, but we believe that the majority has this right. Perhaps the disagreement is more apparent than real. Courts in the majority have allowed ... that discovery may be appropriate to investigate a claim that the plan's administrator did not do what it said it did – that, for example, the application was thrown in the trash rather than evaluated on the merits. But when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency.

---

[3](...continued)
Moreover, the prematurity argument is unconvincing. First, the determination is not premature, since the standard of review defines the permissible range of discovery. *Patton*, 480 F.3d at 492. Second, the plaintiff's *ipse dixit* that the arbitrary and capricious standard often results in a resolution of the dispute in the insurer's favor – even if true – does not satisfy the minimal requirement that arguments must be developed and supported by case law. Perfunctory and skeletal arguments are waived. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 (7th Cir. 2005); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir.2004). Third, rigorous standards *are* difficult to meet. That they are designed to be onerous does not make them "unfair." The arbitrary and capricious standard is no more "unfair" than is the requirement in a criminal case that the government prove guilt beyond a reasonable doubt or the requirement in a civil fraud case that the plaintiff prove the fraud by clear and convincing evidence.

The plaintiff's argument is merely another version of the argument – that this is a state law claim, and not an ERISA claim – that has already been rejected in this case. (Dkt. # 15, 16). Finally, the "unfairness" argument cannot support a deviation from the clearly established and unambiguous Seventh Circuit precedent of *Perlman* and *Semien*.

[4] Even where the review of an administrator's decision is *de novo*, the court has the discretion to limit the evidence to the record before the plan administrator. *Patton*, 480 F.3d at 490.

*Perlman*, 195 F.3d at 982 (emphasis supplied)(citations omitted). In all but exceptional cases, then, discovery beyond the administrative record is inappropriate. *Semien*, 436 F.3d at 815; *Wehrenberg*, 2007 WL 1225375 at *4.

The plaintiff's argument that this is such a case is based on the claimed summary denial of the accidental death benefit claim. It is difficult, however, to see what was summary about the denial. The claim was received on May 25th and the letter denying the claim is dated May 29th. Although, nineteen months had elapsed from the date of plaintiff's wife's death until the date of the submission of the claim, the information submitted by the plaintiff was sparse and not complicated. It consisted of a five-page, double-spaced English translation of the police report; a five-page, double-spaced translation of the autopsy report; and the one-page "Final Report of Death of an American Citizen." A review of the information could easily and comprehensively have been done in four days. It could also have been done in one day. Thus, it cannot be said that there is doubt as to whether a "genuine evaluation" was made by Sun Life. *See Semien*, 436 F.3d at 813.

The plaintiff also contends that there is nothing in the administrative record that supports or details what was done to determine the basis for the denial. The argument simply ignores the May 29th letter which explains what information was relied upon in concluding that there was insufficient evidence of accidental death within the meaning of the policy. The letter reviewed the submitted information, citing from the police report, the autopsy, and the State Department report. (SunLife 00147).[5] Any insufficiencies in the evidentiary record are not the responsibility of the administrator. Either the evidence that would have demonstrated entitlement to death benefits did not exist or was

---

[5] In this regard, the instant case differs from *Wehrenberg*, where there was a real question as to what materials were considered by the plan administrator. 2007 WL 1225375 at *3.

not included with the claim, even though the plaintiff had more than a year and a half to assemble the information on which the claim was based.

Although discovery is normally disfavored in the ERISA context, discovery may be appropriate even where the plan invests the administrator with discretionary authority if the plaintiff can make a *prima facie* showing there is a sustainable allegation that the plan administrator has acted arbitrarily or that a specific conflict of interest has contributed to an unjustifiable denial of benefits. *Semien*, 436 F.3d at 815; *Wehrenberg*, 2007 WL 1225375 at *8. But these are the rare cases, and the instant case does not qualify. There is nothing beyond the contention that the administrator acted summarily – a contention not supported by the evidence.

None of the documentation plaintiff provided Sun Life stated that his wife's death was the result of an accidental bodily injury. The autopsy report indicated that epilepsy or heart disease might have caused the death of plaintiff's wife, but did not draw any conclusions. The State Department report said that the cause of death was undetermined, but that heart disease and epilepsy led to death. The plaintiff told police he thought his wife died from an aggravation of her diseases. This is what the plaintiff gave the claims administrator to consider. He might disagree with the conclusion reached – indeed, his reason for discovery is that the denial is contrary to the terms of the policy and not supported by the evidence (*Plaintiff's Motion to Compel*, ¶¶ 9-10) – but that does equate to even a preliminary showing of misconduct, bias, or conflict of interest that might warrant discovery beyond the record on which the administrator relied.

## CONCLUSION

It is important to keep in mind that the present motion is discovery and not merits-based. The question is not, at this juncture, where the denial of benefits can pass muster under the arbitrary and

capricious standard that governs review. Rather, it is whether the plaintiff is entitled to the discovery he seeks – discovery which in part focuses on the mental processes of the administrator. *Perlman*, 195 F.3d at 982 and *Semien*, 436 F.3d at 813 prohibit the inquiry. Yet, insofar as the motion is based on the plaintiff's disagreement with the administrator's review of the evidence as allegedly evidenced by the absence in the May 29th letter denying benefits of a reference to Mrs. Nunnery's possibly mixing Tegretol with alcohol (*Plaintiff's Motion to Compel*, ¶¶ 4(f)-(h)), the argument relates to the merits of the decision. That argument is manifestly premature. Finally, the requested discovery focuses on the mental processes of the plan administrator. But that information is not appropriate in cases such as this where the plan invests the administrator with the kind of broad-based discretion possessed by Sun Life.

There would be an end, or nearly that, to the rule of restrictive discovery mandated by the uniform decisions of the Seventh Circuit if Mr. Nunnery's motion were granted. Accordingly, the motion to compel [#28] is DENIED, and the defendant's motion for a protective order [#29] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 12/7/07