

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. NUNNERY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 5908 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SUN LIFE FINANCIAL DISTRIBUTORS, INC., | ) | |
| d/b/a Sun Life Financial, and SUN LIFE | ) | |
| ASSURANCE COMPANY OF CANADA, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff John Nunnery filed a first amended complaint against defendants Sun Life Financial Distributors Inc., d/b/a Sun Life Financial ("SLFD"), and Sun Life Assurance Company of Canada ("Sun Life"), alleging a denial of accidental death benefits in violation of 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132(a)(1)(B). All parties have filed motions for summary judgment. In addition, defendant Sun Life has filed a motion to strike plaintiff's L.R. 56.1 Statement of Undisputed Material Facts and to deem admitted the facts in defendant Sun Life's L.R. 56.1 Statement. Plaintiff has filed a motion to strike defendant Sun Life's Exhibit E. For the reasons discussed below, the court: 1) denies plaintiff's motion for summary judgment; 2) grants defendant SLFD's motion for summary judgment; 3) grants defendant Sun Life's motion for summary judgment; 4) grants defendant Sun Life's motion to strike plaintiff's L.R. 56.1 Statement; 5) denies as moot defendant Sun Life's motion to deem admitted the facts in its L.R. 56.1 Statement; and 6) denies plaintiff's motion to strike defendant Sun Life's Exhibit E.

# FACTS[1]

## Plaintiff's Insurance Policy

Plaintiff was the beneficiary of a life insurance policy (the "Policy") issued by defendant Sun Life pursuant to his employer's Dependent Optional Life Insurance Benefit Plan (the "Plan"). That policy covered plaintiff's wife, Kathy Ann Nunnery ("Kass"), who was enrolled in the Plan's dependent accidental death benefits program. Under that program, Sun Life would pay accidental death benefits for an "Accidental Bodily Injury" resulting in loss of life. The Policy defined "Accidental Bodily Injury" as "bodily harm caused by an accident which is sustained directly and independently of all other causes." The Policy excluded accidental death benefit coverage for "a loss which is due to or results from: [1] bodily or mental infirmity or disease of any kind, of infection unless due to an accidental cut or wound" or [2] the "voluntary use of any controlled substance."

Pursuant to the Policy, defendant Sun Life was delegated the authority "to make all final determinations regarding claims for benefits under [the Plan]." The Policy also stated that "[a]ny decision made by Sun Life...including review of denials of benefit, is conclusive and binding on all parties. Any court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious."

## Kass Nunnery's Death

In September 2003, plaintiff was living in Seoul, Korea, with Kass and their daughter. Kass had a history of Crohn's Disease, a condition that causes inflation of the digestive or

---

[1] For reasons discussed below, the facts are taken from defendant Sun Life's L.R. 56.1 Statement of Undisputed Material Facts and accompanying exhibits.

2

gastrointestinal tract, and was taking several medications to control her symptoms.[2] Kass also suffered from epilepsy and had received treatment for seizures in June 2003.

On September 19, 2003, Kass visited plaintiff in the hospital, where he was having his tonsils removed. The next morning, plaintiff could not reach his wife on the telephone from the hospital. He then asked Miles Primm and Roy McBay, friends of the couple, to check on his wife. When they arrived, they discovered that Kass Nunnery had died; they found her body on the couch in a seated position with her chin in her hand. When the police arrived, Mr. Primm stated that he "thought that [Kass] had died naturally." Plaintiff told the police that he thought his wife likely "died from the illness [Crohn's disease]."

The National Institute of Scientific Investigation, located in Korea, performed an autopsy on Kass, which included a blood toxicology screening. The only substances detected by the toxicology screening were carbamazepine and alcohol. Carbamazepine, sold under the brand named "Tegretol," is used as an anticonvulsant in the treatment of epilepsy. Kass's blood contained a concentration of .2 micrograms per milliliter, below the therapeutic level of 4 to12 micrograms per milliliter and well below the lethal level of 5 grams. Kass's blood alcohol level was .1%, and the report stated that alcohol "is not related to the cause of death." The report also noted an enlarged heart with fatty infiltration.

The autopsy report stated, "Death due to cardiac disease and/or epilepsy is the primary consideration." It also stated, "CAUSE OF DEATH: unknown." The Certificate of Death listed the cause of death as "Crohn's Disease, Epilepsy," and the "Final Report of Death of an

---

[2] Kass was diagnosed with Crohn's Disease in May 2001. From June 2001 to March 2003, she underwent five surgeries due to Crohn's complications, and she was hospitalized four times for related pancreatitis and septicemia.

3

American Citizen" stated that the cause of death was unable to be determined, "but heart disease and epilepsy led to death."

Claim History

On April 18, 2005, plaintiff submitted a claim to Sun Life for accidental death benefits. Sun Life paid plaintiff basic death benefits, but denied his claim for accidental death benefits on May 9, 2005. The denial letter stated that plaintiff had not provided any information to support that his "wife had an accidental bodily injury which caused her death." The letter also stated, "we have determined that your wife died from a disease related death," and that Kass's death "cannot be considered 'Accidental' under the terms of this policy."

On December 21, 2005, plaintiff appealed Sun Life's denial of his claim. In that appeal, plaintiff claimed that Kass's death was caused by an accidental overdose related to the "numerous prescription medications she was taking at the time of her death," along with alcohol. Plaintiff stated in his appeal that he based that assertion on the opinion of Dr. Michael Kaufman, a pathologist at Evanston Northwestern Healthcare. Plaintiff did not, however, provide Sun Life with Dr. Kaufman's report or any other documents from Dr. Kaufman. Plaintiff also claimed in his appeal that his wife's death was caused by the "accidental fatal interaction of her prescription medications." Plaintiff stated that he based that assertion on "preliminary discussions with a pharmacologist associated with a major medical center in Chicago," but he did not provide the pharmacologist's identity or any documentation of those discussions.

On January 9, 2006, Sun Life requested proof that plaintiff had elected Dependent Accidental Death Insurance for Kass, along with a list of her prescription medications. On

February 13, 2006, plaintiff sent Sun Life a list of medications taken by his wife at the time of her death. On March 2, 2006, Sun Life conducted a medical review of plaintiff's claim. That review noted that "[t]he use of ethanol with Tegretol is contraindicated. The deceased's blood alcohol level was in the toxic range." The review also stated that the autopsy report "show[ed] the cause of death to be Crohn's disease/epilepsy." On April 11, 2006, Sun Life denied plaintiff's appeal. Plaintiff claims that he was never notified of this denial.

## DISCUSSION

### Defendant SLFD's Motion for Summary Judgment

Defendant SLFD has filed a motion for summary judgment, arguing that it did not issue the insurance policy or play any part in the administration of plaintiff's claim. Plaintiff does not object to the dismissal of SLFD from the instant lawsuit. For that reason, the court grants defendant SLFD's motion for summary judgment.

### Defendant Sun Life's Motion to Strike and to Deem Facts Admitted

Defendant Sun Life has moved to strike plaintiff's Statement of Facts for its failure to conform with L.R. 56.1. As defendant notes, plaintiff's Statement of Facts does not contain short numbered paragraphs, contains several statements of inappropriate argument, and fails to cite to the record on numerous occasions. Plaintiff claims that he filed an amended Statement of Facts that cures the alleged defects. While plaintiff's amended Statement does include numbered paragraphs, it still contains inappropriate argument and fails to provide citations to the record for multiple paragraphs. Additionally, plaintiff filed his amended Statement nearly two months after

5

the summary judgment briefing schedule had concluded, providing defendant Sun Life with no opportunity to respond. For those reasons, the court grants defendant Sun Life's motion to strike plaintiff's L.R. 56.1 Statement.

Defendant Sun Life has also moved to deem admitted all facts in its L.R. 56.1 Statement. Plaintiff has since admitted all facts in that statement, and the court therefore denies the motion as moot.

Plaintiff's Motion to Strike

Plaintiff has moved to strike defendant Sun Life's Exhibit E, a letter documenting the denial of plaintiff's appeal. According to plaintiff, defendant Sun Life had an obligation to provide the letter at an earlier date, and the failure to produce it sooner prejudiced plaintiff. Although plaintiff is correct that defendant should have produced the letter earlier, the court fails to see how plaintiff is prejudiced by its late introduction. Plaintiff himself references the date of the appeal denial in his amended complaint, making it clear that he was aware of the denial, despite his arguments to the contrary in his motion for summary judgment. Because plaintiff is not prejudiced by the inclusion of defendant Sun Life's Exhibit E, the court denies plaintiff's motion to strike.

Remaining Motions for Summary Judgment

Both plaintiff and defendant Sun Life have filed motions for summary judgment. Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The

burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Under ERISA, judicial review of a plan administrator's benefit determination is de novo unless the plan documents grant the administrator discretionary authority. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Plan documents confer discretionary authority on an administrator when they give "latitude to shape the application, interpretation, and content of the rules in each case." Diaz v. Prudential Ins. Co. of America, 424 F.3d 635, 637-38 (7th Cir. 2005). When the documents contain such language, courts apply the "arbitrary and capricious" standard of review. Houston v. Provident Life and Accident Ins. Co., 390 F.3d 990, 995 (7th Cir. 2004).

In the instant case, the parties agree that the plan documents give Sun Life, the administrator, discretionary authority, so the court will apply the "arbitrary and capricious" standard of review. Under that standard, which plaintiff acknowledges is "extremely lenient," questions of judgment, including the weight and sufficiency of the medical and vocational evidence, are left to the administrator's discretion. Dougherty v. Indiana Bell Telephone Co.,

7

440 F.3d 910, 917 (7th Cir. 2006). The court will uphold the administrator's decision if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome....' Houston, 390 F.3d at 995 (internal citations omitted). The court should not overturn a plan administrator's decision unless it was "downright unreasonable." Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 429 F.3d 698, 700 (7th Cir. 2005), quoting Tegtmeier v. Midwest Operating Engineers' Pension Fund, 390 F.3d 1040, 1045.

In the instant case, defendant Sun Life has presented a reasonable explanation for its decision to deny accidental death benefits to plaintiff. As discussed above, the Policy defines an "Accidental Bodily Injury" resulting in loss of life as "bodily harm caused by an accident which is sustained directly and independently of all other causes." No document provided by plaintiff supports the conclusion that his wife's death was accidental. In fact, each document, including the autopsy report, the death certificate, and the "Final Report of Death of an American Citizen," listed either Crohn's Disease, heart disease, epilepsy, or an unknown reason as the cause of Kass's death. None of these conditions qualifies as an "accidental bodily injury" under the Policy's definitions.

Plaintiff attempts to argue that his wife died from a "fatal interaction of her prescription medications." The toxicology report consulted, however, showed only alcohol and carbamazepine in Kass's blood. This court is not in a position to determine that Kass's blood contained other potentially lethal substances, despite the results of the toxicology report, simply because Kass had prescriptions for other medications at the time of her death. Plaintiff also claims that he has expert witnesses to support his theory of an accidental overdose, but plaintiff

8

has not provided any documentation from these experts, and in one case he has not even provided the expert's name.

Plaintiff simply did not provide Sun Life with any basis on which to determine that Kass Nunnery passed away from an accidental overdose. Instead, Sun Life evaluated the information in the medical record and made a reasoned determination that her death had not been accidental as defined by the Policy. Additionally, despite plaintiff's protestations to the contrary, Sun Life provided him with a detailed explanation of the denial of his claim as required by ERISA. Without more documentation from plaintiff, the court cannot conclude that Sun Life's decision was arbitrary or capricious. Because Sun Life's decision to deny plaintiff's claim for accidental death benefits was reasonable, the court grants defendant Sun Life's motion for summary judgment. Plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the reasons discussed above, the court: 1) denies plaintiff's motion for summary judgment; 2) grants defendant SLFD's motion for summary judgment; 3) grants defendant Sun Life's motion for summary judgment; 4) grants defendant Sun Life's motion to strike plaintiff's L.R. 56.1 Statement; 5) denies as moot defendant Sun Life's motion to deem admitted the facts in its L.R. 56.1 Statement; and 6) denies plaintiff's motion to strike defendant Sun Life's Exhibit E.

ENTER: April 18, 2008

_____
Robert W. Gettleman
United States District Judge